25 C.C.P.A.(Patents)

**In re LOWRY.**

**Patent Appeal No. 3844.**

Court of Customs and Patent Appeals.
Jan. 24, 1938.

O. H. Eschholz, of East Pittsburgh, Pa. (Loyd H. Sutton, of Washington, D. C., F. W. Lyle and R. W. Bailey, both of East Pittsburgh, Pa., and Raymond Jones, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 9, 14, 15, 20, 22, 33 to 41, inclusive, 45 and 46 in appellant's application for a patent for an alleged invention relating to improvements in thermionic cathodes.

Claims 9, 20, 33, 34, and 35 are illustrative of the appealed claims. They read:

"9. In combination, a filament comprising cobalt-nickel, an ingredient which renders the cobalt-nickel composition forgeable and a coating of electron-emissive oxide."

"20. In combination with an evacuated container, an electrode comprising a base metal composed of an alloy comprising cobalt, nickel and titanium and a layer of electron-emissive material on said base metal, said cobalt-nickel being from 80 percent to 95 percent of said alloy."

"33. A cathode for an electron discharge device composed of an alloy comprising a base selected from the group comprising nickel and cobalt and constituting at least 90% of the alloy, and an added quantity of silicon, the silicon constituting at least ½ to 1% of the alloy.

"34. An electrically conductive core for a thermionically active cathode comprising an alloy of nickel and silicon.

"35. A cathode element for an electron discharge device composed of an alloy comprising a base selected from the group comprising nickel and cobalt and constituting at least 90% of the alloy, and an added quan-

tity of substance taken from the group comprising silicon, titanium, vanadium and zirconium, the added quantity including at least silicon and titanium, the silicon constituting at least ½ of 1% of the alloy, and the titanium constituting at least ¼ of 1% of the alloy."

The references are: Hallock, 1,695,845, December 18, 1928; Mandell, 1,769,229, July 1, 1930.

Appellant's alleged invention relates to thermionic cathodes composed of an alloy of nickel and cobalt, and other metals. We quote from his specification:

"The alloy that I have found to be the most satisfactory, comprises, nickel, cobalt, iron and titanium. Varying proportions of these elements have been employed with an approximation of equally good results. I have used alloys containing Ni and Co [nickel and cobalt] in the aggregate of 80 to 95%, in which the Ni and Co [nickel and cobalt] were present in proportions ranging from 95 to 5% Ni to 5 to 95% Co. *The combination Ni-Co* [nickel-cobalt] *has a higher resistance and is less susceptible to chemical attack by the oxide-coating materials used than either of the metals alone.* The remainder of the alloy consists of metals which render the Ni-Co [nickel-cobalt] alloy foregeable and, among other things, remove oxides from the alloy.

"Therefore, I introduce into the alloy from 5 to 20% of Fe-Ti [ferrotitanium], Va-Fe [ferrovanadium], Si-Fe [ferrosilicon] or Mo-Fe [ferromolybdenum] in an amount sufficient to render the Ni-Co [nickel-cobalt] forgeable and ductile so that the ingot may be reduced to a fine wire or may be otherwise shaped." (Italics ours.)

Preferred examples are stated in appellant's application to be "80 parts nickel, 20 parts cobalt, 7½ parts iron, [and] 2½ parts titanium." The iron and titanium, it is stated, are "used in the form of a ferrotitanium alloy." An analysis of appellant's alloy, which was stated to be typical, is: "Nickel, 70%, Cobalt, 19½%, Iron, 7⁴⁄₁₀%, [and] Titanium, 2³⁄₁₀%." In referring to his process of preparing his alloy, appellant states: "The above-mentioned proportions of nickel, cobalt, and ferro-titanium are melted together in an electric furnace, care being taken to prevent access of oxygen. After the melt is completed and just before casting, a small amount of magnesium and aluminum is added to serve as deoxidizing

agents. There is also a possibility that the ferro-titanium functions as a deoxidizing agent as well, and it is within the scope of my invention to use ferro-titanium, ferrovanadium, *silicon,* ferro-silicon, manganese or ferro-manganese." (Italics ours.)

Appellant's application was filed October 28, 1926. On October 13, 1933, it was amended, in part, as follows: Where the expression 'cobalt-nickel' occurs in the claims, it signifies that the proportion of cobalt to nickel lies within the limits specified previously, namely, 95 to 5% nickel and 5 to 95% cobalt. Where the claims state that a core or alloy or filament comprise particular elements, it means that no other substances are present in such amount as would substantially affect the properties of the resulting material."

It will be observed that appellant's thermionic cathode is composed of an alloy consisting of a combination of *nickel and cobalt,* in specified proportions, to which is added another metal or metals, as set forth in the application, to render the *nickel-cobalt composition* forgeable, and to serve as deoxidizing agents. Appellant's application states that the *combination of nickel and cobalt* is important, because it "has a higher resistance and is less susceptible to chemical attack by the oxide-coating materials used than either of the metals [nickel or cobalt] alone."

The patent to Mandell was issued July 1, 1930, on an *application filed May 19, 1925.* It relates to alloys for "electrode and contact elements which are subject to electric arcs, such as the contact elements of timing devices and circuit making and breaking devices and the electrodes of spark plugs." The patent discloses an alloy composed of nickel and not less than one half of 1 per cent. and preferably not more than 7 per cent. of silicon. Any or all of other elements, such as manganese, vanadium, titanium, tungsten, aluminum, iron, zirconium, and chromium, may be used as constituents in the patentee's alloy. It is stated in the patentee's application that cobalt might be substituted for nickel, or that those metals might be used in combination, but that, when so used, the amount of one should be small in proportion to the amount of the other, because, "when large amounts of these elements are present simultaneously, the thermal and electrical conductivities of the resultant alloy are considerably lowered, which is an undesirable effect."

The patent to Hallock was issued December 18, 1928, on an *application filed October 27, 1927*. It relates to an alloy for "electron-emitting cathodes of the oxide coated type, such as are used in thermionic discharge devices, and more particularly to an electrically conductive core or base for such cathodes." The patentee's alloys are composed of nickel and silicon or nickel and manganese. The nickel-silicon alloy consists of nickel and from 2 to 6 per cent. silicon, and the nickel-manganese alloy consists of nickel and from 2 to 4 per cent. manganese.

For the purpose of clarity, we restate that the patent to Mandell was issued July 1, 1930, on an *application filed May 19, 1925;* that appellant's application was filed *October 28, 1926,* approximately seventeen months after the filing of the Mandell application; and that Hallock's application, which matured into patent No. 1,695,845 December 18, 1928, was filed *October 27, 1927,* one year subsequent to the filing of appellant's application. The three applications were, therefore, copending in the Patent Office.

The patent to Hallock contains four claims, which, due to the fact that they are involved in the issues before us, we deem it advisable to quote. They read:

"1. An electrically conductive core for a thermionically active cathode comprising an alloy of nickel and silicon.

"2. An electron-emitting cathode comprising an alloy of nickel and silicon and a coating thereon of thermionically active material.

"3. A metal core for an electron-emitting cathode of the oxide coated type composed of an alloy of nickel and about 3% of silicon.

"4. An electron-emitting cathode comprising a core composed of an alloy of a metal of the group containing nickel and up to 6% of silicon."

It will be observed that those claims relate to thermionic cathodes composed of an alloy of nickel and silicon, as stated in claims 1 and 3, nickel and silicon and a "thermionically active material," as stated in claim 2, and an "alloy of a metal of the group containing nickel [but one of the metals of that group being included] and up to 6% of silicon," as defined in claim 4.

Quoted claim 4 of the Hallock patent is probably sufficiently broad to include either cobalt or nickel, but neither it, nor any other of the Hallock claims, is sufficiently broad to include both ; whereas appellant's appealed claims, except claims 33, 34, 35, 36, 40, and 41, hereinafter discussed, relate to alloys containing both nickel and cobalt. (The significance of comparing appellant's alloys with those of the patentee Hallock will later become apparent.)

On June 13, 1929, an interference was declared between the Hallock patent and an application of Mandell, filed November 20, 1926. (This is not the application which matured into the Mandell patent of record.) Quoted claims 1 and 4 of the Hallock patent were involved in that interference, and priority of invention was awarded to Mandell.

On February 6, 1932, an interference (No. 63,138) was declared between the Mandell application of November 20, 1926 (the application involved in the prior interference), appellant's present application, and the application of one Matthew A. Hunter. The count there in issue reads: "An element for an electron discharge device composed of an alloy comprising a base selected from the group comprising nickel and cobalt and constituting at least 90% of the alloy, and an added quantity of silicon, the silicon constituting at least ½ to 1% of the alloy."

The count calls for an electron discharge device composed of an alloy having a "base" selected from the group containing nickel and cobalt. It does not call for an alloy having a base composed of both *nickel and cobalt.*

On motion to dissolve, made by Mandell, the tribunals of the Patent Office concurred in holding that the count was unpatentable to appellant. The reasons assigned for such holding were that, as appellant had failed to copy the claims of the Hallock patent within two years subsequent to its issuance, he was estopped to claim the *subject-matter of the claims* patented to Hallock; that the patent to Mandell (which is prior art *so far as appellant's application is concerned,* and is cited as a reference in the case at bar) disclosed the same alloy as that defined in the count there in issue; and that, as the claims of the Hallock patent were for thermionic cathodes composed of an alloy of the "same class" as that defined in that and other counts proposed by appellant, those

claims could be relied upon to suggest the use of the alloy described in the Mandell patent for thermionic cathodes. It was squarely held, however, that the Mandell patent, standing alone, was not an anticipation of the count there in issue, because it did not relate to thermionic cathodes.

In the instant case, appealed claim 34 corresponds to claim 1 of the Hallock patent. The tribunals of the Patent Office concurred in holding that appellant was estopped to make that claim because of his failure to copy it within two years of the date of the issuance of the Hallock patent. All of the other appealed claims were rejected on the patent to Mandell in view of the disclosure in the claims of the Hallock patent, for the reasons assigned by the tribunals of the Patent Office in the interference No. 63138, and claims 9, 14, 15, 22, 40, 41, 45, and 46 were rejected for the additional reason that they were indefinite and broader than appellant's invention.

In its decision in the instant case, affirming the decision of the Primary Examiner holding that all of the appealed claims were unpatentable over Mandell in view of the claims of the Hallock patent, the Board of Appeals quoted from, and relied upon, the decision of the Board of Appeals in interference No. 63138, supra. The Board's quotation from that decision reads, in part, as follows: "Lowry also appeals from the holding of the Examiner of Interferences that the count of the interference and proposed counts A, F, G and H (appealed claims 33, 37, 38 and 39) are unpatentable to Lowry over Mandell 1,769,229, in view of the claimed subject matter of Hallock 1,695,845. Said Mandell patent issued on an application filed May 19, 1925, *which is prior to the earliest date alleged in Lowry's preliminary statement.* This patent discloses electrode and contact elements formed of an alloy of nickel and silicon in the proportion of 1 to 5%. *The Examiner held that this Mandell patent alone is not an anticipation as it does not relate to electron discharge devices.* He relied upon the claims of the Hallock patent to suggest the use of the Mandell alloy for vacuum tube structures and held that these two patents combined render the count and proposed counts A, F, G and H [appealed claims 33, 37, 38, and 39] unpatentable to Lowry. Lowry contends that the Hallock patent is not a pertinent reference because it issued

on an application filed subsequent to his application involved in the interference. The Examiner of Interferences, however, did not hold that the Hallock patent was a reference for all it discloses but merely for the subject matter of the claims. This arises from the fact that Lowry is estopped to make the claims of the Hallock patent by his failure to make them within two years. The failure of Lowry to make said claims within two years must be held an admission that he is not the inventor of the subject matter thereof and is analogous to the disclaimer of Rule 96 for a failure to make a suggested claim. We find no error in the Examiner's holding that the Hallock patent to this extent may be combined with the Mandell patent to render the count and proposed counts A, F, G and H [appealed claims 33, 37, 38, and 39] unpatentable to Lowry. (Italics ours.)

Is appellant estopped to claim the subject-matter of claim 34 which corresponds to claim 1 of the Hallock patent, as held by the tribunals of the Patent Office? The claim relates to an alloy of nickel and silicon for thermionic cathodes.

If appellant disclosed the invention claimed in the Hallock patent, and failed to make claims to it within two years after the issuance of that patent, he is estopped from thereafter claiming the subject-matter of those patented claims. However, if appellant originally disclosed and claimed the subject-matter of the Hallock claims, and continuously asserted his right to a patent for such subject-matter, as counsel for appellant here contend, estoppel does not lie. Rowntree v. Sloan, 45 App.D.C. 207; Chapman v. Beede, 54 App.D.C. 209, 296 F. 956; Chapman et al. v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491.

Counsel for appellant contend that some of appellant's original claims (particularly claims 1, 3, and 7) claimed the subject-matter defined in the Hallock patented claims, and that, therefore, appellant is not estopped to claim that subject-matter.

An examination of appellant's original claims 1, 3, and 7, discloses that claims 1 and 3 relate broadly to alloys, and are not limited to alloys for thermionic cathodes, and that claim 7 relates to an alloy for thermionic cathodes comprising both *cobalt and nickel* and another element.

We must hold, therefore, that appellant's original claims were not for substantially

the same subject-matter as that defined in the Hallock patented claims, and that he is estopped from claiming the subject-matter of claim 34.

With reference to the rejection of the other appealed claims on the patent to Mandell in view of the subject-matter of the Hallock claims, counsel for appellant contend, inter alia, that Mandell does not disclose the alloys claimed by appellant, and, therefore, is not a proper reference.

Due to the views we hold, we deem it unnecessary to discuss that issue in detail. It is sufficient to say that the patent to Mandell does disclose an alloy composed of cobalt and nickel in combination, together with the addition of small amounts of any or all of the following substances disclosed and claimed by appellant: Iron, zirconium, titanium, vanadium, manganese, and silicon.

The decision of the Board of Appeals was based upon the proposition that the patent to Mandell disclosed the alloys defined in the appealed claims, and that, although the patent to Mandell was not an anticipation of those claims because it did not disclose the use of those alloys in thermionic cathodes, the claims in the Hallock patent did disclose the use of alloys of the "same class" for thermionic cathodes.

As hereinbefore noted, the claims in the Hallock patent do not relate to alloys containing both cobalt and nickel; whereas, all of the remaining appealed claims, except claims 33, 35, 36, 40, and 41, call for alloys containing both cobalt and nickel.

It is true that the patentee Mandell stated that cobalt could be substituted for nickel, and it may be that those two metals are equivalents in Mandell's alloys for the uses to which his alloys are put. However, there is nothing of record, except the Examiner's statement, to establish that those metals are equivalents and may be substituted for each other in alloys *for thermionic cathodes.* On the contrary, appellant's application teaches, as hereinbefore noted, that they are not equivalents in an alloy *for thermionic cathodes.* Furthermore, the record contains two affidavits of Porter H. Brace, an expert in metallurgy and one eminently qualified to speak authoritatively on the subject, wherein it is pointed out that cobalt and nickel are not equivalents in an alloy *for thermionic cathodes,* and that in the combination of cobalt and nickel there is some "interaction of the molecules of the

one material with those of the other, which gives an increased hot-strength over what would be obtained from a mere mixture of two mutually indifferent metals. * * * The cobalt and the nickel are clearly not equivalent to each other since the cobalt gives improved results over the nickel alone. But more important still, this unexpected excess of hot-strength over that normally to be expected from an *admixture of cobalt with nickel* shows an important improvement due to the cooperation and interaction of the two, * * * throughout the entire range of constitution covered by the appealed claims."

We hold, therefore, on the record in this case that, when used in alloys for thermionic cathodes, cobalt and nickel are not equivalents.

As hereinbefore noted, the quoted claims in the Hallock patent do not define an alloy composed of both cobalt and nickel. Obviously, then, although Hallock was claiming an alloy for thermionic cathodes, he was not claiming the same alloy as that disclosed and claimed by appellant in appealed claims 9, 14, 15, 20, 22, 37, 38, 39, 45, and 46. See quoted claims 9 and 20 which, so far as the cobalt-nickel composition is concerned, are illustrative of that group of claims.

In view of the fact that the tribunals of the Patent Office concurred in holding that Mandell alone was not a sufficient reference for the rejection of the appealed claims, and as the claims in the Hallock patent do not suggest the use of both cobalt and nickel in alloys for thermionic cathodes, we must hold that the rejection of such of the appealed claims as call for both cobalt and nickel, claims 9, 14, 15, 20, 22, 37, 38, 39, 45, and 46, on the patent to Mandell in view of the claims of the Hallock patent was not proper.

Claims 33, 35, 36, 40, and 41 relate to thermionic cathodes composed of alloys "comprising a base selected from the group comprising nickel and cobalt." Those claims call for an alloy having a *base* selected from the *group containing* nickel and cobalt. They do not call for an alloy having a base composed of *both nickel and cobalt,* and, in this respect, correspond to the quoted count in interference No. 63138, and quoted claim 4 of the Hallock patent.

Claim 33 also calls for silicon of at least one-half to 1 per cent. of the alloy, and, therefore, is directed to substantially the

same subject-matter as called for in claim 4 of the Hallock patent. However, claims 35, 36, 40, and 41 differ from claim 33, in that they call for the inclusion of elements not mentioned in the claims of the Hallock patent. Claim 35 specifies "titanium" in an amount constituting at least one-fourth of 1 per cent. of the alloy. Claim 36 calls for "vanadium" in an amount constituting at least one-fourth of 1 per cent. of the alloy. Claim 40 calls for an "added quantity of substance taken from the group comprising titanium, ferro-titanium, ferro-vanadium, ferro-silicon, manganese and ferro-manganese, *the added quantity including titanium* in an amount of at least $\frac{1}{4}$ of 1% of the alloy." (Italics ours.) Claim 41 calls for an "added quantity of substance" taken from the same group mentioned in claim 40; the added quantity to include "ferro-titanium" in an amount of at least 5 per cent. of the alloy.

In view of the fact that "small changes in percentages of the ingredients often produce alloys of totally different characteristics," as stated by the Primary Examiner in holding some of the appealed claims to be indefinite and broader than appellant's invention, we are unable to hold that claims 35, 36, 40, and 41, which call for elements not mentioned in the claims of the Hallock patent, do not relate to patentably different subject-matter. We are of opinion, therefore, that the claims of the Hallock patent do not suggest the use of the alloys defined in claims 35, 36, 40, and 41 for thermionic cathodes, and that the board erred in rejecting those claims on the patent to Mandell in view of the claims in the Hallock patent. However, for the reasons stated by the Board of Appeals, we think claim 33 was properly rejected on the patent to Mandell in view of the subject-matter of the claims in the Hallock patent. De Ferranti v. Harmatta, 50 App.D.C. 393, 273 F. 357. See, also, In re Cole, 82 F.2d 405, 23 C.C.P.A., Patents, 1057, and cases cited therein.

Claims 9, 14, 15, 22, 40, 41, 45, and 46 were rejected by the tribunals of the Patent Office on the ground that they were indefinite and broader than appellant's invention. In so holding, the Primary Examiner pointed out that those claims were sufficiently broad "to cover an alloy having a negligible amount of nickel-cobalt and any amount of an ingredient which renders the nickel-cobalt forgeable," and that no basis for such claims is contained in appellant's specification. He further stated that claims to an alloy should specifically state the percentages of the cobalt-nickel composition as well as the percentages of other ingredients, because, he said, "it is well-known small changes in percentages of the ingredients often produce alloys of totally different characteristics." In support of his views, the Examiner cited the decisions of this court in the cases of In re Daniel Gray et al., 53 F.2d 520, 19 C.C.P.A., Patents, 745; In re Lowry, 74 F.2d 303, 22 C.C.P.A., Patents, 838.

We have carefully examined each of those claims in view of the arguments presented by counsel for appellant in support of their contention that the claims were improperly rejected. We are of opinion, however, for the reasons stated by the Primary Examiner, in view of the authorities cited, that those claims were properly rejected as being indefinite and broader than appellant's invention.

Although, as amended, appellant's application contains the statement that, "Where the expression 'cobalt-nickel' occurs in the claims," it signifies that the "proportion" of those substances "lies within the limits" of "95 to 5% nickel and 5 to 95% cobalt," and that where the claims state that the alloy of which the thermionic cathodes are composed comprises particular elements, it should be understood that no other substances are present in an amount that will substantially affect the properties of the alloy, such limitations are not contained in, and we cannot read them into, the claims which were rejected as being indefinite and broader than appellant's invention. In re Lowry, supra.

For the reasons stated, the decision of the Board of Appeals is modified, being reversed as to claims 20, 35, 36, 37, 38, and 39, and in all other respects affirmed.

Modified.

GRAHAM, the late Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.