34 C.C.P.A. (Patents)

## CRYNS v. MUSHER.
### Patent Appeal No. 5285.

Court of Customs and Patent Appeals.

March 25, 1947.

Ira Milton Jones, of Milwaukee, Wis., for appellant.

Harry Price, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter defined by the single count in issue to appellee Sidney Musher.

The interference is between appellee's patent No. 2,198,218 issued April 23, 1940, on an application filed February 3, 1940, and appellant's application No. 268,-730, filed April 19, 1939. Appellee is the junior party and the burden was upon him, therefore, to establish priority of the invention by a preponderance of the evidence.

The invention defined by the count in issue relates to a process of making a stabilized wheat germ preparation which may be used in the food industry, such as in the manufacture of bread, and is sufficiently defined by the count in issue which reads:

"A process of making a stabilized wheat germ preparation which comprises combining finely divided wheat germ with a relatively small amount of milk-solids-not-fat dispersed in water and then concentrating, said aqueous dispersion having been heated during processing to a temperature of at least 200° F."

The count in issue is claim 4 of appellee's patent and was copied by appellant for interference purposes.

Appellant's application relates to a food ingredient and particularly to an ingredient in the manufacture of confections, such as candy and ice cream.

Appellant states in his application that powdered milk does not have a very agreeable flavor and that it has been found that if the milk is combined with a cereal and the starch cells of the cereal are broken down and converted into sugar, the flavor of the resultant product is materially improved and that confections made with the improved powdered milk have a better flavor. Appellant's milk powder is essentially composed of milk and cereal and any starch cereal may be used, including rye, rice, maize, barley, and oats. Wheat germ flour, appellant states, has been found to give especially good results. Appellant discloses in his application that wheat germ and skimmed milk together with small amounts of lecithin and sugar, may be used in his process. In describing his process, appellant states that the ingredients are thoroughly mixed by mechanical agitation to form an emulsion; that the emulsion is conveyed to a suitable heating means where it is heated to approximately 160° F. for a period of from 10 to 15 seconds; that during that state of the process "a preliminary gelatinization takes place and while still at this temperature, it is sprinkled or otherwise deposited upon a heated roller. The roller, onto which the emulsion is deposited, is one of a pair between which the deposit is rolled under high pressure. Preferably, both of the rollers are heated. The temperature employed should be approximately 300° to 325° F." After the heat and pressure treatment, "the dehydrated compound is pulverized" and is then ready for use for the purposes hereinbefore stated.

Appellant further states in his application that "lecithin performs an important function in promoting the desired combination of the cereal and milk."

In the ex parte prosecution of appellant's application, the Primary Examiner held that appellant was not entitled to make the claim constituting the count in issue for the reason that appellant did not disclose the subject matter defined therein. On appeal, the Board of Appeals reversed the decision of the Primary Examiner and held that appellant was entitled to make the claim constituting the count in issue. Thereupon the involved interference was declared. Appellee moved to dissolve the interference on the ground that the subject matter of the count in issue was not disclosed in appellant's application, and also on the ground that appellant was estopped under the provisions of Rule 94 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix, from presenting in his application the subject matter defined by the count for the first time more than a year after the issuance of appellee's patent.

It appears from the record that claim 4 of appellee's patent was copied by appellant on April 2, 1942, nearly two years after the date of the issuance of appellee's patent—April 23, 1940.

The Primary Examiner overruled appellee's motion to dissolve, holding, in accordance with the decision of the Board of Appeals, that appellant disclosed in his application the subject matter defined by the count in issue. The examiner further held that appellant was not estopped from claiming the invention here involved. In his decision, the examiner referred to "initial claims 7, 8, 15 and 16" in appellant's application which apparently remained in his application until December 16, 1940, more than seven months after appellee's patent issued—April 23, 1940, and stated that they were "directed to the production of dried cereal and milk products or wheat germ and milk products;" that, in accordance with the decision of the Board of Appeals, it appeared that appellant "has at all times asserted claims for substantially the same subject matter as that of the present single count of the interference;" that, therefore, appellant was not estopped to make the claim constituting the count in issue; and accordingly overruled the motion of appellee to dissolve the interference.

In its decision, the Board of Interference Examiners stated that counsel for appellee argued in his brief that appellant does not disclose in his application the limitation of the count in issue, namely, " 'said aqueous dispersion having been heated during processing to a temperature of at least 200° F.' " The board held, in substance, that the quoted limitation of the count did not exclude the use of a temperature of at least 200° F during the

drying step upon the drying rolls disclosed in appellant's application; that counsel for appellee apparently did not disagree with the views expressed by the Primary Examiner that appellant disclosed in his application the degree of temperature called for by the count in issue; and, accordingly, held that appellant disclosed in his application the process defined by the involved count.

Relative to the question of estoppel, the board stated that it was pointed out in the Primary Examiner's decision on the motion to dissolve that appellant's "original claims 7, 8, 15 and 16 were directed to the preparation of dried products made from wheat germ and skim milk and that in the case of claim 7 a roll drying process was specified which process would necessitate heating to at least 200° F. according to the ex parte ruling of the Board of Appeals." The board then stated that *"Even if it be assumed that the examiner's position is correct it does not however completely dispose of the estoppel issue in this case."* (Italics not quoted.)

The board further stated in its decision that at the time—April 23, 1941—of the termination of the one year period after the date of the issuance of appellee's patent, appellant had in his application only claims 19 to 23, inclusive; that on October 24, 1941, claims 19 to 23, inclusive, were cancelled, and claims 24 and 25 were added by amendment; and that claims 24 and 25 were the only claims in appellant's application at the time he copied claim 4— the count in issue—from appellee's patent.

The pertinent part of Rule 94 of the Rules of Practice in the United States Patent Office, which is identical with the second paragraph of Sec. 4903, R.S.,U.S.C., title 35, § 51, 35 U.S.C.A. § 51, enacted August 5, 1939, reads:

"No amendment *for the first time* presenting or asserting a claim which is the same as, or for substantially the same subject matter as, a claim of an issued patent may be made in any application unless such amendment is filed within one year from the date on which said patent was granted." (Italics not quoted.)

The board considered claims 19 to 23, inclusive, and held that they did not claim substantially the same subject matter as that defined by the count in issue. The board did not consider in its decision original claims 7, 8, 15 and 16.

With reference to Rule 94, supra, the board stated:

"Rule 94 states in effect that a patent claim must be copied within one year from the date on which the patent was granted. *This rule has been* interpreted such [sic] that its requirements are held to be satisfied *if claims to substantially the same subject matter have been prosecuted within the one-year period and have been in the case continuously up to the time when the claim of the patent was copied."* (Italics not quoted.)

In support of its interpretation of Rule 94, the board cited, among other cases, Phelan v. Green, 71 F.2d 298, 300, 21 C.C. P.A., Patents, 1228, decided June 12, 1934, where it was held that "the failure of an applicant to copy claims of the patent within two years [now one year] of its publication constitutes, prima facie, laches, and in an interference proceeding between them such laches may be raised by the patentee as a ground of estoppel against the applicant." In so holding, the court there relied upon the decisions in cases therein cited, including the Webster Electric Co. v. Splitdorf Electrical Co. 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792, relied upon by the board in the instant case.

The board also cited and quoted from our decision in the case of In re Lowry, 93 F.2d 909, 912, 25 C.C.P.A., Patents, 829, decided January 24, 1938, where it was stated that:

"If appellant disclosed the invention claimed in the Hallock patent, and failed to make claims to it within two years after the issuance of that patent, he is estopped from thereafter claiming the subject-matter of those patented claims. However, if appellant originally disclosed and claimed the subject-matter of the Hallock claims, and continuously asserted his right to a patent for such subject-matter, *as counsel*

*for appellant here contend,* estoppel does not lie." (Italics not quoted.)

In the case of Chapman v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491, decided March 1, 1920, the Supreme Court held, as stated in the headnotes, that one whose application "disclosed but did not claim an invention which is later patented to another, is allowed by the patent law [Sec. 4886 of the Revised Statutes, which was then in force] two years after such patent issues within which to file a second or divisional application claiming the invention;" and that an applicant's right to claim such invention may not be held to be lost by laches "merely because of a delay not exceeding the two years allowed by the statute." The court was careful to point out in its decision in that case that it did not intend to intimate that there "may not be abandonment which might bar" an applicant from claiming an invention patented to another within the two year (now one year) period. Sec. 4886, R.S.,U.S.C., title 35, § 31, 35 U.S.C.A. § 31, was amended August 5, 1939, changing the two year period to one year.

All of the cases relied upon by the board, and the case of Chapman v. Wintroath, supra, were decided prior to the enactment of Sec. 4903, supra, and the adoption and promulgation of Rule 94, supra, and, therefore, are not authority for the board's construction of that rule.

█ We are in agreement with the conclusion reached by the board that appellant's application discloses the invention defined by the count in issue.

█ We are unable to agree, however, that the board's interpretation of Rule 94 is correct. The rule plainly provides that no amendment *for the first time,* presenting or asserting a claim or claims which are the same as, or for substantially the same subject matter as, a claim or claims of an issued patent, may be made unless such claim or claims are presented within one year from the date on which the patent issued. As stated by the Board of Interference Examiners in the case of Thompson v. Hamilton, which was approved by this court, 152 F.2d 994, 997, 33 C.C.P.A., Patents, 732, 735, " * * * all that is required is that he [the apppellant] shall be urging claims covering the matter which is claimed in the patent before the critical period has terminated."

█ We think the rule is clear and unambiguous and that in order to determine whether appellant is entitled to claim the invention defined by the involved count, the board should have considered all of the original claims in appellant's application—7, 8, 15 and 16—as well as claims 19 to 23, inclusive. In so holding, it should be understood that this decision is limited to the construction of Rule 94 and its application to the issues in this case.

Having failed to properly construe and apply the provisions of Rule 94, supra, the decision of the Board of Interference Examiners is reversed and the cause remanded for proceedings consistent with the views herein expressed.

Reversed and remanded.