36 C.C.P.A.(Patents)

## Application of HERTHEL.
### Patent Appeal No. 5581.

United States Court of Customs
and Patent Appeals.

April 12, 1949.

Rehearing Denied June 24, 1949.

Pennie, Edmonds, Morton & Barrows, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Comissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 2, 3, 7, and 8 in appellant's application for a patent for an alleged invention directed to a process for the amination of olefines by direct reaction between olefine and ammonia. No claims were allowed.

Claim 2 is representative of the appealed claims. It reads—

"2. In the amination of olefines wherein an olefine and ammonia are reacted at an elevated temperature and pressure on the order of about 1000—3000 pounds per square inch in the presence of a catalyst capable of selectively promoting the amination reaction, the improvement which comprises charging catalyst of high and substantially uniform selective amination activity to the upper portion of an amination reaction zone and removing the catalyst from the lower portion thereof, whereby a downwardly moving bed of the catalyst is provided within the reaction zone, introducing a mixture of ammonia and an olefine into the lower portion of the amination reaction zone and passing this mixture upwardly through the moving bed of catalyst and separately charging ammonia to the amination reaction zone at a point between the point of introduction of the ammonia-olefine mixture and the point of withdrawal of the catalyst from the amination reaction zone, whereby the olefine and reaction products are substantially removed from the catalyst leaving the amination reaction zone."

The references relied upon are:

| | | |
|---|---|---|
| I. G. Farben (Ger.) | 479,079 | Sept. 20, 1930 |
| Rheinische (Br.) | 319,205 | Oct. 9, 1930 |
| Taylor | 2,168,590 | Aug. 8, 1939 |
| Schutte | 2,268,535 | Dec. 30, 1941 |
| Degnen et al. | 2,290,580 | July 21, 1942 |

Appellant acknowledges that the following description in the decision of the Board of Appeals correctly summarizes the disclosure of the subject matter here in issue:

"The alleged invention is directed to a process for the production of nitrogen con-

taining organic compounds by the reaction of olefines with ammonia under pressures ranging from 1000 to 3000 pounds per square inch and at an elevated temperature in the presence of a suitable catalyst such as nickel, cobalt or the like. It is supposed to reside particularly in maintaining a relatively high level of activity of the catalyst by passing the same through the reaction zone counter currently to the reactants, and in separating the reaction products from the catalyst after it leaves the reaction zone by passing ammonia therethrough which carries the reaction products back into the reaction zone."

The patent to I. G. Farben discloses a formation of ethylamine from ammonia and ethylene at elevated temperature under super atmospheric pressure and in the presence of contact masses or catalysts.

The Rheinische patent describes catalytic alkylation reactions with various kinds of compounds including the reaction of olefines with ammonia in the presence of a particular type of catalyst; namely, activated bleaching clays or bleaching earths.

The patent to Taylor discloses a process for synthesizing organic compounds in the presence of a nickel catalyst which shows the reaction of olefines with ammonia to form amines.

The patent to Schutte is directed to the handling of catalytic material "in which both the catalyst and the reacting materials are caused to continuously flow in the same or in opposite directions through a reaction zone." The disclosure states that the "fresh catalyst is continuously introduced into the reaction zone and contaminated catalyst is continuously removed therefrom to be reactivated externally."

The patent to Degnen et al. relates to catalytic cracking of hydrocarbon oils, and in particular to a method for converting high boiling hydrocarbons into low boiling hydrocarbons in the presence of a catalyst whereby the catalyst is continuously removed and revived in order that the catalytic bed will maintain a substantially constant effectiveness. The catalyst is of a nature that can be fed to and withdrawn from the reaction zone continuously and such catalyst is fed thereto countercurrently to the flow of the hydrocarbon vapors. An inert gas, such as flue gas, carbon dioxide or light hydrocarbon gases, is introduced into the reaction chamber at a point therein between the points where the hydrocarbon vapor is introduced and the catalyst is withdrawn, so that the gas thus introduced will denude or strip the discharged catalytic material of the products of the reaction.

Claims 2, 3, 7, and 8 were rejected by the examiner on the grounds that they were indefinite with respect to "amination of olefines" and were based on an inadequate disclosure. The examiner further rejected the claims as unpatentable over each of the disclosures of the patents to Taylor, Rheinische, or I. G. Farben, in view of Schutte or Degnen et al., for the stated reason that the three patents of the group first enumerated show the amination of olefines, and the last two cited patents of the second group show "the physical process of catalyst handling, e. g. a downwardly moving bed of catalyst and countercurrent flow of reactants in contact therewith."

The Board of Appeals in affirming the action of the examiner stated that it was not satisfied that the appealed claims were rejectable as being indefinite and based upon an incomplete disclosure, but that it was satisfied, for the reasons given by the examiner, that the combined effect defined by the appealed claims are "only additive and is not conducive to unobvious results." After construing the statement of the examiner relative to the disclosure of the art of record, the board stated: "Each of the expedients used by the appellant is old and well known in the chemical art."

The primary issue here presented, as stated by appellant, is whether the appealed claims define subject matter patentable over the combined disclosures of the prior art of record. That issue, as correctly stated by the Solicitor for the Patent Office, may be reduced to the question whether the utilization by appellant of one of the reactants as the purging medium, knowing it to be inert to the catalyst, involves invention.

Appellant admits in his brief that each of the three patents of the first group of references hereinbefore enumerated con-

tains a description of some form of process wherein ammonia and an olefine are said to participate in a reaction which results in the formation of an amine. Appellant also admits that the two patents of the second group of references "do disclose catalytically promoted processes incorporating procedures that provide a downwardly moving catalyst bed together with some auxiliary form of procedure which serves to separate reaction products from the catalyst as it leaves the catalytic reaction chamber."

Appellant contends, however, that neither of the two patents of the second group of cited references contains any mention of any form of process wherein ammonia participates as one of the reactants in any type of chemical reaction, or in which ammonia alone or admixed with any other material comes into contact with a catalyst of any kind either to serve as a reactant, or to serve as a purging medium. In the last analysis, appellant predicates patentability of the appealed claims upon the fact that he uses ammonia, one of the reactants for the process, as the purging gas, instead of using one of the gases disclosed in the patent to Degnen et al.

The examiner overruled appellant's contention, pointing out that "Ammonia is inert with respect to the catalyst, and in this sense is equivalent to the inert gases used as purges in Degnen." Moreover, the examiner, as early as his final rejection on June 8, 1945, stated that "Degnen shows purging by an inert gas, i. e. inert as regards the catalyst. * * * Given a choice of inert gases, it is obvious that one which increases the concentration of one of the reactants will increase the rate of reaction."

Appellant's contention for the patentability of the appealed claims upon the theory or concept of utilizing ammonia as the purging gas is based upon his assertion that ammonia is not an inert gas. The tribunals of the Patent Office in their rejections have considered that the term "inert" was used in the patent to Degnen et al. to mean inert to the catalyst, while appellant here interprets the term to mean inert in the reaction carried out in the reaction chamber.

The solicitor urges, in view of appellant's concession in his brief that the use of ammonia as a purging medium could not be tolerated if the selective activity of the catalyst were adversely affected by ammonia, and in view of the broad teaching of the prior art of record, that appellant in using ammonia as the purging medium has followed the teaching of such prior art, and the fact that he may achieve an advantage in addition to that taught by the prior art does not necessarily indicate that invention has been defined by the appealed claims. The solicitor supports that position by the citation of various cases decided by this court.

The interpretation which appellant here attributes to the term "inert" is different from the meaning attributed to the term in the art of record and by the tribunals of the Patent Office. The critical point which appellant now raises appears not to have been raised in the Patent Office, although appellant there had the opportunity to do so. Under the authorities, appellant may not properly raise the point here for the first time, since the court is not in a position to consider points not considered in the decisions of the tribunals below. In re Eitzen, 86 F.2d 829, 24 C.C.P.A., Patents, 778, In re Davis, 103 F.2d 922, 26 C.C.P.A., Patents, 1249.

A careful examination of the arguments presented by appellant fails to convince the court that there was manifest error in the decision of the Board of Appeals. Therefore, the court is compelled to conclude that the rejection of the involved claims by the tribunals of the Patent Office was proper, and, for the reasons hereinbefore stated, the decision appealed from is affirmed.

Affirmed.