# United States Court of Appeals for the Federal Circuit

---

(Interference No. 105,744)

**JOHN ROBERT ADAIR, DILJEET SINGH ATHWAL, AND JOHN SPENCER EMTAGE,**
*Appellants,*

**v.**

**PAUL J. CARTER AND LEONARD G. PRESTA,**
*Appellees.*

---

2011-1212

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: February 7, 2012

---

DOREEN YATKO TRUJILLO, Cozen O'Connor, P.C., of Philadelphia, Pennsylvania, argued for appellants. With her on the brief was KYLE VOS STRACHE.

OLIVER R. ASHE, JR., Ashe, P.C., of Reston, Virginia, argued for appellees. Of counsel on the brief were JEFFREY P. KUSHAN and RACHEL H. TOWNSEND, Sidley Austin, LLP, of Washington, DC.

---

Before RADER, *Chief Judge*, LINN and MOORE, *Circuit Judges*.

LINN, *Circuit Judge*.

Appellants John Robert Adair, Diljeet Singh Athwal, and John Spencer Emtage (collectively, "Adair") appeal a decision of the Board of Patent Appeals and Interferences ("Board") holding that Adair's single claim involved in Interference 105,744 with junior party Paul J. Carter and Leonard G. Presta (collectively, "Carter") was barred under 35 U.S.C. § 135(b)(1). Because the Board properly determined that Adair's claim was barred under § 135(b)(1), this court affirms.

## I. BACKGROUND

On November 21, 2005, Adair filed U.S. Application Serial No. 11/284,261 ("'261 Application") with the United States Patent and Trademark Office ("PTO"). In a preliminary amendment filed concurrently with this application, Adair requested an interference based on Carter's U.S. Patent No. 6,407,213 ("'213 Patent"). The only count of the interference is drawn to humanized antibodies. More specifically, the count involves non-human amino acid substitutions on specific residues of the heavy chain variable domain (an antibody comprises two light chains and two heavy chains, each with a "constant" and "variable" domain). On February 2, 2010, the Board declared the interference, identifying the claims in the count to be claims 30, 31, 60, 62, 63, 66, 67, 70, 73, 77-81 of the '213 Patent and claim 24 of the '261 Application. *Carter v. Adair*, Interference No. 105,744, Declaration of Interference at 4 (Feb. 2, 2010). The Board awarded Adair priority benefit to PCT/GB90/02017 ("PCT Application"), filed December 21, 1990, which claims priority to a British application filed by Adair on December 21, 1989.

Claim 66 of Carter's '213 Patent, representative of the claims in the count and the basis for an interference-in-fact, recites:

**66.** A humanized antibody heavy chain variable domain comprising non-human Complementarity Determining Region (CDR) amino acid residues which bind antigen incorporated into a human antibody variable domain, and further comprising a Framework Region (FR) amino acid substitution at a site selected from the group consisting of: 24H [H=heavy], 73H, 76H, 78H, and 93H, utilizing the numbering system set forth in Kabat.

'213 Patent col.88 l.66-col.89 l.6.

Corresponding claim 24 in Adair's '261 Application recites:

**24.** A humanised antibody *comprising a* heavy chain variable domain comprising non-human complementarity determining region amino acid residues which bind an antigen and a human framework region wherein said framework region comprises a *non-human* amino acid substitution at a residue selected from the group consisting of 23, 24, 49, 71, 73, and 78, and combinations thereof, as numbered according to Kabat.

'261 Application, Preliminary Amendment and Request for Interference dated Nov. 21, 2005 at 3, *as amended by* Amendment of Sept. 9, 2009 at 4 (added language emphasized).

Because Adair's claim 24 was not presented to the PTO prior to June 18, 2003, one year from issuance of the Carter '213 Patent (the "critical date") as required by 35 U.S.C. § 135(b)(1), Adair relied on pre-critical date claims

1 and 16 of the PCT Application and corresponding U.S. national stage Application No. 07/743,329 ("'329 Application") to avoid the bar of § 135(b)(1).  Claims 1 and 16 recite:

> 1. A CDR-grafted antibody heavy chain having a variable region domain comprising acceptor framework and donor antigen binding regions wherein the framework comprises donor residues at at least one of positions 6, 23 and/or 24, 48 and/or 49, 71 and/or 73, 75 and/or 76 and/or 78 and 88 and/or 91.

> 16. A CDR-grafted antibody heavy or light chain or molecule according to any one of the preceding claims comprising human acceptor residues and non-human donor residues.

PCT Application at 67-69.  Adair originally relied on claim 8 of the PCT Application, but because that claim related to light chains, Adair later abandoned that argument.  In its request for rehearing before the Board, Adair argued for the first time that claim 2 of the PCT Application also provided pre-critical date support for claim 24, but the Board declined to consider this argument for the first time on rehearing.  *Carter v. Adair*, Interference No. 105,774, Decision on Request for Rehearing at 4-5 (Nov. 5, 2010) ("*Rehearing*").

At the national stage, the examiner originally rejected each of Adair's PCT claims under one or more of the following sections: 101, 102(b), 103, and 112 first and second paragraphs.  '329 Application, Office Action of November 18, 1992.  Adair cancelled the PCT claims and added claims 23-66, later cancelled by an amendment adding claims 67-119 requiring multiple amino acid substitutions at specific locations in the heavy chain.  '329

Application, Amendments of January 19, 1993 and April 16, 1993.

The Board rejected Adair's argument that claims 1 and 16 in the PCT Application provide pre-critical date support for claim 24 in the '261 Application because: (1) the PCT claims were not patentable to Adair; (2) Adair added limitations to overcome the examiner's rejection; and accordingly, (3) material differences presumptively existed between the post- and pre-critical date claims that Adair failed to rebut. *Carter v. Adair*, Interference No. 105,774, Decision on Motions at 9-10 (Aug. 30, 2010) ("*Decision*"). Citing *Regents of the University of California v. University of Iowa Research Foundation*, 455 F.3d 1371, 1377 (Fed. Cir. 2006), the Board stated that "[a]n applicant cannot expect to avoid the bar of § 135(b) by timely copying a claim from an issued patent when that claim is not patentable to that applicant." *Decision* at 10-11. On rehearing, the Board rejected Adair's assertion that materiality must be "determined in view of the patent claims being copied" and declined to compare Adair's post- or pre-critical date claims with copied claim 66 from Carter's '213 Patent. *Rehearing* at 3. Adair appeals, and this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II. DISCUSSION

### A. Standard of Review

"We review the Board's construction of 35 U.S.C. § 135(b)(1) de novo, as statutory interpretation is a question of law." *In re Berger*, 279 F.3d 975, 980 (Fed. Cir. 2002).

## B. Analysis

Adair argues that the Board erred by failing to assess material differences "in view of the patent claim being copied [claim 66 from Carter's '213 Patent]." Appellant Br. 22. According to Adair, this court's precedent does not endorse a test that allows the Board to completely ignore copied claim 66 from Carter's '213 Patent when assessing the material differences between the post- and pre-critical date claims. Adair argues that the materiality test from *Berger* and *Regents* requires an assessment of material limitations based on the "identity" between the post-critical date claim and copied claim 66 from Carter's '213 Patent—in other words, in view of the "count"—and not based on the post-critical date claim standing alone. *See Regents*, 455 F.3d at 1375 ("[A]s this court's precedent explains, California must demonstrate that claims in the '191 application provide pre-critical date support for the *post-critical date identity* between claim 205 [the post-critical date claim] and the '646 patent [the issued patent]." (emphasis added)); *Berger*, 279 F.3d at 983.

Carter counters that the question of "[w]hether there is a sufficient degree of identity between pre- and post-critical date claims for compliance with § 135(b) is an inquiry that is distinct and independent" from any comparison with the patent claims copied. Appellee Br. 33. According to Carter, the Board correctly interpreted § 135(b)(1) in holding that "establishing support for post-critical date claims does not entail looking at material limitations of the patented claims." *Id.* 42.

This court agrees with Carter. Section 135(b)(1) states:

A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any appli-

cation unless such a claim is made prior to one year from the date on which the patent was granted.

35 U.S.C. § 135(b)(1).   Notwithstanding the seemingly strict language of the statute, a limited exception to this one year bar exists "where the copier had already been claiming substantially the same invention as the patentee" during the critical time period.  *Corbett v. Chisholm*, 568 F.2d 759, 765 (CCPA 1977).

i.

In *Corbett*, the post-critical date claims "correspond[ed] exactly" with issued "Chisholm patent" claim 1. 568 F.2d at 759.   The Board rejected Corbett's post-critical date claims under § 135(b)(1).  *Id.*  Corbett relied upon several groups of pre-critical date claims from the application and a predecessor application in an attempt to avoid the § 135(b) bar.  *Id.* at 761-63.   On appeal, this court compared the "copied claim" with the pre-critical date claims and affirmed the Board's finding that material differences precluded Corbett from relying on any of the pre-critical date claims to overcome the § 135(b) bar. *Id.* at 765-66.  In identifying certain limitations of Chisholm patent claim 1 as "material," the court was simply noting the material differences that existed between that claim as copied by Corbett after the critical date and those pre-critical date claims Corbett was relying on to overcome the § 135(b) bar.  The court did not establish any rule requiring some sort of threshold assessment of which limitations of the copied patent claim are material before determining whether material differences exist between post- and pre-critical date claims.  In making this comparison, the court referenced Chisholm patent claim 1 only because that was the post-critical date claim.

Similarly, in *Berger*, the post-critical date claim was copied directly from and identical to issued "Muller patent" claim 1. 279 F.3d at 978. The examiner rejected Berger's pre-critical date claims 1-6 for indefiniteness and other grounds, and rejected post-critical date claim 7 under § 135(b)(1). *Id.* at 979. The Board rejected Berger's argument that claims 1-6 provided pre-critical date support for claim 7 because it found material differences between the "copied claim" and the pre-critical date claims, and this court affirmed. *Id.* at 982 ("The Board found the 'circumferential groove' limitation to be material because it was added by Muller during prosecution to avoid prior art. We agree with the Board's determination of materiality."). Again, the court in *Berger* referenced the issued Muller patent claim 1 only because the post-critical date claim, claim 7, was a direct copy of the patent claim. *Id.* at 981-83. This court affirmed the Board's analysis based only on the material differences between the *post- and pre-critical date claims. Id.* at 983 ("Because Berger's *original claims 1-6* [the pre-critical date claims] *do not include a material limitation of Berger claim 7* [the post-critical date claim], copied claim 7 is not entitled to the earlier effective date of those original claims for purposes of satisfying § 135(b)." (emphasis added)).

In *Regents*, this court expressly approved an analysis of material differences based solely on a comparison of the post- and pre-critical date claims in order to obtain the benefit of the earlier filing date:

The Board compared claim 205 [the post-critical date claim] with claims 202-203 . . . and then with claim 204 [collectively, the pre-critical date claims]. The Board found that California's claim 205 contained material differences from claims 202-204. Therefore, claim 205 could not benefit from the earlier filing date of those claims. . . . On

> appeal, California does not contest the Board's finding of material differences between claim 205 and claims 202-204. Instead, California challenges the Board's conclusion that the correct inquiry under § 135(b)(1) asks whether claims 202-204 contain material differences from claim 205 and not whether claims 202-204 are to the same invention as claims in the '646 patent.

455 F.3d at 1373. The court in *Regents* rejected California's argument, explaining that "the relationship between the post- and pre-critical date claims . . . is not only relevant, but dispositive of the section 135(b)(1) question." *Id.* at 1374. Adair's arguments in this case are similar to California's arguments in *Regents*, where the court held that there is no requirement that the Board reference the issued patent claim(s) in the count to assess the material differences between the post- and pre-critical date claims. *Id.* at 1374-76.

The statement in *Regents* that the applicant's earlier filed claims must "provide pre-critical date support for the *post-critical date identity* between [the post-critical date claim] and the [issued patent]" to avoid the § 135(b)(1) bar, 455 F.3d at 1375 (emphasis added), does not require the Board to assess material differences in view of the issued patent claim(s) in the count. *See Berger*, 279 F.3d at 982. The question of material differences between post- and pre-critical date claims for purposes of overcoming a § 135(b) bar "is a distinctly different question from whether claims . . . are directed to the same or substantially the same subject matter" for purposes of provoking an interference. *Id.* As explained in *Regents*, § 135(b) is a statute of repose, intended to "limit[] the patentee's vulnerability to a declaration of an interference" by "limit[ing] the window of time in which the cause of the interference can occur." 455 F.3d at 1376. When a material difference exists between the post- and pre-critical

date claims, a belated interference is improper because it would be a "*different interference*[]" than that which "should have been earlier declared by the PTO." *Id.* (emphasis added).

For these reasons, this court holds that to overcome a § 135(b) bar for a post-critical date claim, an applicant must show that such claim is not materially different from a pre-critical date claim present in the application or any predecessor thereto in order to obtain the benefit of the earlier filing date. Any claims filed within the critical period, whether or not later cancelled, may provide pre-critical date support for the later filed patent claim(s), so long as the pre-critical date claims are not materially different from the later filed claim(s). *Corbett*, 568 F.2d at 765-66; *see also Regents*, 455 F.3d at 1373; *Berger*, 279 F.3d at 981-82.

Here, the Board found material differences between post-critical date claim 24 of the '261 Application and pre-critical date claims 1 and 16 of the PCT Application based on the prosecution history of the '261 Application. During prosecution, Adair added several limitations to claim 24—limitations not present in claims 1 and 16 of the PCT Application—to avoid examiner rejections during prosecution. *Decision* at 9. Adair failed to rebut the Board's finding with any evidence that the differences between claim 24 and claims 1 and 16 of the PCT Application were immaterial. *Id.* at 10. Adair criticizes the Board for failing to consider claim 66 from Carter's '213 Patent in assessing material differences. But, for the reasons explained above, an assessment of claim 66 was not necessary. What was required in determining whether the § 135(b) bar might be overcome was an assessment of the material differences between the post- and pre-critical date claims, which is precisely what the Board did.

ii.

Adair also contends that the Board erred in applying *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002) in the context of an interference to conclude that a limitation added to a claim in response to a rejection that results in allowance is presumed to be necessary to patentability and therefore "material." Adair asserts that the burden of proof for the § 135(b) motion lay with Carter, and thus Adair cannot be faulted "for not providing any reason why the limitations that differ . . . were not material." Appellant Br. 25. Carter counters that "the Board's presumption of material differences is firmly grounded in the law." Appellee Br. 44. *See Parks v. Fine*, 773 F.2d 1577, 1579 (Fed. Cir. 1985); *Corbett*, 568 F.2d at 765.

Carter is correct. When an applicant adds limitations in response to an examiner's rejection, and those limitations result in allowance, there exists a well established presumption that those limitations are necessary to patentability and thus material. *See Festo*, 535 U.S. at 734; *Corbett*, 568 F.2d at 765. This presumption applies with equal force in the interference context. *Parks*, 773 F.2d at 1579 (holding in an interference case that "[t]he insertion of [a] limitation to overcome the examiner's rejection is *strong, if not conclusive, evidence of materiality*" (emphasis added)). Here, because Adair cancelled claims 1 and 16 of the PCT Application in response to the examiner's rejections, and added limitations into what eventually became claim 24 of the '261 Application to secure allowance, the Board properly presumed material differences between Adair's post- and pre-critical date claims. Adair failed to rebut this presumption.

iii.

Adair argues that the Board erred by establishing an absolute requirement that the pre-critical date claims be patentable to the applicant for the applicant to rely on those claims to avoid the § 135(b) bar. Carter counters that the Board did not articulate such a requirement, but even if it did, the requirement is appropriate. The Board quoted language from *Regents*, where this court stated that it "perceives no inequity in a construction of section 135(b)(1) that might, in some circumstances, prevent a patent applicant from relying on the filing date of a claim to which it was not statutorily entitled." *Regents*, 455 F.3d at 1377.

The court in *Regents* did not articulate a per se patentability requirement for an applicant to rely on pre-critical date claims, but rather observed that where material limitations are added to overcome an examiner's rejection after the critical date, there is "no inequity" in finding the later added claims barred under § 135(b)(1). Adair is correct that cancelled claims may be relied upon to avoid the § 135(b) bar. *See Corbett*, 568 F.2d at 765 ("The words 'prior to' in the present code clearly point to a 'critical date' prior to which . . . the copier had to be claiming the invention, whether or not the claims were subsequently cancelled."). Adair is incorrect, however, in contending that the Board established any absolute requirement that the pre-critical date claims must have been patentable to Adair. Even if it did, the error would have been harmless because the Board found material differences between the post- and pre-critical date claims, which Adair failed to rebut.

iv.

Finally, Adair argues that the Board abused its discretion in failing to consider claim 2 of the PCT Application as pre-critical date support for claim 24. The Board did not abuse its discretion in declining to consider claim 2 of the PCT Application for the first time on rehearing. 37 C.F.R. § 41.125(c), governing rehearing before the Board, provides that "[t]he burden of showing a decision should be modified lies with the party attacking the decision [and t]he request must specifically identify . . . (ii) The place *where the matter was previously addressed* in a motion, opposition, or reply." 37 C.F.R. § 41.125(c)(3) (emphasis added). Because Adair failed to previously address claim 2 prior to its petition for rehearing, the Board properly refused to consider it on rehearing.

## III. CONCLUSION

For the foregoing reasons, this court affirms the decision of the Board.

**AFFIRMED**